IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HARDY CAPPS, §<br>    Petitioner, §<br>§<br>v. §<br>§<br>RICK THALER, Director, §<br>Texas Department of Criminal Justice, §<br>Correctional Institutions Division, §<br>    Respondent §| Civil Action No. 4:09-CV-476-Y |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Hardy Capps, TDCJ-ID #1299894, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Huntsville, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In April 2005 Capps was convicted of murdering his wife Gina Capps on December 16,

1995, and sentenced to life imprisonment. (Clerk's R.)  Capps appealed his conviction and sought state postconviction habeas relief, to no avail. *Capps v. State*, 244 S.W.3d 520 (Tex. App.–Fort Worth 2007)*; Capps v. State*, PDR No. 332-08; *Ex parte Capps*, State Habeas Appl. No. 72,329-01, at cover.  This federal petition was timely filed.

On December 16, 1995, Capps's wife, Gina, was found murdered, lying in a ditch by the side of the road outside Jacksboro, Texas.  The pickup she was driving was still running and their two-year-old son was discovered inside the pickup truck unharmed.  Capps was not charged with her murder until September 2003.  Although there was no direct evidence linking Capps to the offense, state witnesses placed Capps in the vicinity of the murder scene on the date and time of the offense, provided testimony contradicting Capps's alibi and his version of the events, testified to incriminating statements and threats made by Capps during the years following the murder, and testified that Capps was the beneficiary of a life insurance policy on Gina, owned a knife similar to the one used to kill Gina, hired a man and a woman, known to them both, to kill Gina, and knew where the murder weapon was hidden.  (3RR at 356-57, 373)  Capps testified on his own behalf and denied any involvement in Gina's murder but admitted he gave untruthful statements to the police and the grand jury.

### D. ISSUES

Capps raises the following claims for habeas relief:  (1) he received ineffective assistance of counsel; (2) the state engaged in prosecutorial misconduct; (3) there is no evidence to support his conviction; and (4) the trial court abused its discretion in making evidentiary rulings.  (Petition at 7-8)

### E. RULE 5 STATEMENT

Thaler believes that Capps has exhausted his state court remedies as to the claims presented as required by 28 U.S.C. § 2254(b)(1). (Resp's Answer at 9)

### F. DISCUSSION

*Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of

the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399.  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption.  *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

*(1)  Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial.  U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 688.  Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance.  *Id.* at 687, 697.  In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id*. at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.

The same judge who presided over Capps's trial conducted the state habeas proceedings and ordered counsel to submit affidavits in response to Capps's allegations.  Upon receiving counsel's affidavits, the habeas court forwarded the application to the Texas Court of Criminal Appeals, which denied the application without written order.  (State Habeas R. at cover, 42, 50)  This constitutes an

adjudication on the merits by the state court and is entitled to the presumption of correctness. In the absence of a written opinion or express findings of fact, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1];*Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002). Thus, assuming the state court applied the familiar *Strickland* attorney-performance standard to Capps's ineffective assistance claims and made factual findings consistent with the denial of the claims, we defer to the state court's determination unless it appears the decision was contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Capps claims his trial attorneys, William Ray and David Pearson, were ineffective by failing to call the gas station attendant who sold him gas on the day in question to show how long it takes to get to or from the crime scene and his house. In response, Ray testified–

> [T]he gas tickets in question were introduced by myself. The tickets did not say the time of purchase, and Applicant had told someone that he had purchased gas on the day of the murder before he went to Jacksboro after being called by the sheriff's department. The name of the witness would not have made any difference, because Applicant could have always purchased gas at another place. I don't remember if the investigator we had went to the gas station and tried to find out if they remembered the time Applicant bought gas, but it would not have mattered in my opinion. I did drive the distance with the investigator and determined that while the time was close from the scene of the murder to Applicant's house, you could make the drive in the allotted time. The time was only close if you ran the time from

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

5

the actual discovery of the decedent to the time of the call from the sheriff to Applicant. There could have been additional time from when the decedent was killed before her actual discovery. In short, there was time for Applicant to have made the drive. For that reason, I did not believe that it would have helped to make that an issue in the case.

Pearson testified–

> The gas tickets were admitted into evidence as a result of a defense subpoena that the sheriff's lead investigator produce all physical and documentary evidence accumulated by law enforcement. Nonetheless, the gasoline receipts produced and admitted into evidence did not have a purchase time recorded on them. The evidence produced related to the [sic] any gasoline purchase that was temporally relevant to the offense, did not provide support for the defensive theory in the case. Applicant suggests that the fact that he was called at his home by law enforcement investigating the death shortly after the victim was discovered should have exculpated him had it been presented correctly by Counsel. However, the travel time might have been a critical issue, if it is assumed the victim was discovered within a few minutes of her demise. But there was no evidence available to attempt to prove that the victim was killed within just a few minutes of her discovery.
> Both counsel and the private investigator assigned to assist in the defense drove and timed the shortest and logical route of travel from the crime scene to the Applicant's residence, and there was no credible evidence to attempt to prove that Appellant could not have physically been present when the victim was killed.

Counsel's decision not to call certain witnesses generally cannot be used to substantiate a claim of ineffective assistance of counsel. The presentation of testimonial evidence is a matter of trial strategy and counsel's decisions in this regard are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles v.* Mirzayance, 129 S. Ct. 1411, 1420 (2009); *Strickland,* 460 U.S. at 689.

Capps claims counsel was ineffective by failing to investigate the state witnesses to ascertain what their testimony would be so as to impeach their testimony and keep out evidence of extraneous offenses. In response, Ray testified–

> To the contrary, I specifically told Applicant what the witnesses were going to say. Several of Applicant's girlfriends testified that they were afraid of Applicant and that he had made admissions of the [sic] his wife's murder to them. I

6

specifically remember Applicant telling me that didn't matter to him, that no one would believe them.

Pearson testified–

> Counsel's file documents that he spent approximately 8 hours just in reading the grand jury transcripts in this case. Counsel's file also documents that he spent approximately 109 hours out-of-court preparing to defend Capps. Counsel spent dozens of those hours to reading and studing literally hundreds of pages of law enforcement investigative reports and witness statements. This case was unsolved and investigated over a period of approximately nine years. The Texas Ranger assigned to the investigation, and the Jack County Sheriff's Office, and numerous cooperating agencies logged countless hours and generated hundreds of pages of reports and witness interviews. Counsel personally read and took extensive notes from every single report. Counsel created a witness log with capsule summaries with page references to grand jury transcripts, for all 31 witnesses who testified to the Grand Jury. . . The Wise County District Attorney maintained an open file policy in regard to this case. Counsel was given a box of grand jury testimony and about two boxes of law enforcement reports and witness statements. Undersigned Counsel began to acquire this discovery two years before trial in April 2005. In fact well over a year, by January 2004, Counsel had already read and made detailed notes from the testimony of approximately 31 grand jury witnesses. Many of the grand jury witnesses attested that Capps made incriminating statements about the murder of his wife. Many of the same witnesses testified at trial, and Undersigned Counsel was fully prepared to cross-examine and impeach these witnesses with any variance in their trial testimony as compared to their previous sworn testimony. Capps' claim that Undersigned Counsel waited until the witnesses were called to testify to review their statements is incredible and absolutely false.
> Counsel litigated pretrial to keep out any State attempts to stray into extraneous offenses, or into extraneous offenses that though minimally probative, the probity would be substantially outweighed by unfair prejudice. Counsel has experience contesting and litigating the burden that the State must meet in order to interject extraneous offenses form being admitted. Counsel has also successfully preserved error appealed, and then reversed a conviction due specifically to trial court abusing its discretion in admitting extraneous offenses.

The Texas Court of Criminal Appeals clearly accorded credibility to counsel's testimony on the issue, and counsel's testimony is consistent with the state record. Such credibility determinations are entitled to a presumption of correctness, absent clear and convincing evidence to the contrary. *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

7

Capps also claims counsel was ineffective by calling him to testify and eliciting testimony from him that he lied to the police and the grand jury about his actions on the morning of the murder. (4RR at 295-97)  In response, Ray testified–

> Applicant says I never talked to him about lying [to] the grand jury before testifying and about his testimony.  This is not true.  I have attached the relevant testimony of Applicant specifically agreeing that the and I had talked about his statements to the authorities, testifying before the grand jury, and that we had talked about those things.  Applicant was also asked whether he knew that he didn't have to testify.  Applicant understood that he did not have to testify and he testified that he and I talked about each of the aforementioned things.

As above, the Texas Court of Criminal Appeals clearly accorded credibility to counsel's testimony on the issue, and counsel's testimony is supported by the state record.  Such credibility determinations are entitled to a presumption of correctness, absent clear and convincing evidence to the contrary.  *Id.*

Capps presents no compelling argument or evidence to overcome the strong presumption that his trial attorneys were competent or that but for counsel's alleged acts or omissions, the jury would have acquitted him.  Thus, Capps has not met his burden to rebut the state court's denial of his claims.

*(2)  Prosecutorial Misconduct*

Capps claims the prosecutor engaged in misconduct by commenting on a state witness's credibility and by interjecting his feelings and opinions about the case during closing argument in the guilt/innocence phase of trial.  Specifically, as cited by Capps, he complains of the following argument:

> Marlin [an inmate incarcerated with Capps] has been to the pen.  Marlin is a felon, no question about it; and he's a thief, and he likes to smoke marijuana, and he told you that; *but he's not a liar.*  Okay?
> He admitted he's a thief.  He admitted he smokes dope, but he told you that

the Defendant admitted at least some involvement in this case. (5RR at 21)

The record does not reflect that trial counsel objected to this argument nor was the instant claim raised on direct appeal. Instead, the claim was raised for the first time in Capps's state habeas application, which was denied without written order. As such, the state did not expressly reject Capps's claim on this proceduraul ground. Nevertheless, Texas courts strictly apply the contemporaneous-objection rule to closing arguments. *See e.g., Rodriguez v. State,* 530 S.W.2d 944, 946 (Tex. Crim. App. 1975); *Thomas v. State,* 693 S.W.2d 7, 10 (Tex. App.–Houston [14th Dist.] 1985. This fact supports a presumption that the state applied a procedural bar to this claim and did not review its merits. Federal habeas corpus relief is unavailable in the face of a state procedural default unless the petitioner can show either cause for the default and actual prejudice or that the federal court' failure to consider the claim will result in a miscarriage of justice, *i.e.,* that the petitioner is actually innocent of the crime. *Sawyer v. Whitley,* 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir.2001). Capps has failed to meet this burden; thus, this claim is procedurally barred from our review.

Capps also claims the prosecutor engaged in misconduct by injecting his personal opinion as to the weight of the evidence when he commented: "The Judge has talked to you about reasonable doubt and what that means, and certainly, you know, we submit there is no reasonable doubt. There's–*I wouldn't think there's any doubt at all*." (5RR at 18) Trial counsel objected to the argument, and the trial court sustained the objection and instructed the jury to disregard the comment but denied Capps's motion for a mistrial. The state appellate court determined that the trial court had not abused its discretion by denying Capps's motion for a mistrial because the

9

statement appeared "to refer more to the strength of the State's case based on the evidence, as viewed by the prosecutor, than the prosecutor's personal opinion of" Capps's guilt, and becasue, notwithstanding the remark, the evidence was both legally and factually sufficient "from several sources" of Capps's guilt.

Capps has not demonstrated that the state court's ajudication of the issue is contrary to Supreme Court law or was based on an unreasonable determination of the facts. A prosecutor may not express a personal opinion concerning the merits of a case. *United States v. Morris,* 568 F.2d 396, 401 (5th Cir. 1978). Nevertheless, juries are presumed to follow the instructions given by the court. *See Zafiro v. United States,* 506 U.S. 534, 540-41 (1993). Capps has not demonstrated how the prosecutor's comment, which was remedied by the charge to the jury, rendered his trial fundamentally unfair.

*(3) No Evidence*

Capps claims there was "zero evidence" of his guilt, given that there was no biological or physical evidence directly linking him to the offense, only speculative and circumstantial evidence. Applying the proper standards of review, the state appellate court concluded the evidence was both legally and factually sufficient. The court noted–

> The jury was charged on the law of parties. The jury charge therefore allowed the jury to convict Appellant as a principal or a party. Appellant gave conflicting accounts of his actions on the day of the murder. Several women testified that Appellant had hinted about or admitted to killing or having hired someone to kill Gina. While some witnesses who testified that they saw Appellant near the scene of the murder were hesitant in their identification, [Wayne] Porter was sure enough that it was Appellant that he thought about "running him down" to talk about a particular well when he saw him on the morning of the murder. At trial, Porter's level of certainty was the same.
> Appellant's cousin testified that he had given Appellant a knife with a serrated edge. The knife that was admitted as State's exhibit 45, which Appellant's cousin had given to a sheriff's deputy and which Appellant's cousin testified was

>  similar to the knife he had given Appellant, was consistent with the knife that caused the fatal stab wound. Witnesses testified that Appellant had told them that he knew where the weapon that killed Gina was.

*Capps*, 244 S.W.3d at 526-27.

The Texas Court of Criminal Appeals also rejected Capps's sufficiency claims by refusing his petition for discretionary review and denying his state habeas application. This was an adjudication regarding the merits of the claim.

In challenges to state convictions under § 2254, only the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), need be satisfied. Under this standard, a federal court must consider whether, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt. *Id.* Direct and circumstantial evidence adduced at trial, as well as all inferences reasonably drawn from it, is viewed in the light most favorable to the verdict. *See United States v. Sanchez,* 961 F.2d 1169, 1173 (5th Cir. 1992). The jury is the final arbiter of the weight of the evidence and of the credibility of witnesses. *United States v. Barksdale-Contreras,* 972 F.2d 111, 114 (5th Cir. 1992). Having conducted an independent inquiry as to sufficiency under the *Jackson* standard, the state courts' disposition of the legal sufficiency-of-the-evidence claim appears consistent with *Jackson*.

*(4) Evidentiary Rulings*

Capps claims the trial court abused its discretion by allowing, over his objection, evidence of Gina's good character but refusing to allow him to impeach such testimony with evidence of her extra-marital affairs and felony theft probation. Although Capps does not cite the court to the specific testimony he complains of, on appeal he complained of testimony from Gina's ex-husband,

Michael Dearick, and Gina's sister, Gayle Abbott, that Gina was a good mother and would not have pulled over for a stranger on the day she was murdered. The state court concluded the issue had not been preserved because Capps cited no law in support of the claim and further noted–

> [W]e do not view the witnesses' testimony that Gina was a good mother and would not have pulled over for a stranger as testimony of her good character. Regardless, Dearick testified without objection that Gina "was a great mom. She really never g[a]ve you any trouble. She took care of her kids" and answered affirmatively that that was a priority for her. While Appellant did object to the prosecutor's asking Dearick if Gina would have pulled over on the side of the road for a stranger, he did not object when Abbott testified that Gina was a very good mom and would not have pulled over for a stranger. Appellant has therefore failed to preserve a complaint about the State's offering evidence of the deceased's character, if that was his complaint.

*Capps*, 244 S.W.3d at 528 (citing to TEX. R. APP. P. 33.1(a)(1)).

The appellate court thus determined Capps's claim to be inadequately briefed and not preserved for purposes of appeal absent a contemporaneous objection at trial. In refusing Capps's petition for discretionary review, the Texas Court of Criminal Appeals implicitly reached the same conclusion. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) (holding when last reasoned opinion explicitly imposes procedural default, later decision will not be seen as silently disregarding the bar). As previously noted, the contemporaneous-objection rule is an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims. *Sharp v. Johnson,* 107 F.3d 282, 285-86 (5th Cir. 1997); *Nichols v. Scott,* 69 F.3d 1255, 1280 n.48 (5th Cir. 1995). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by Capps, the claim is procedurally barred from this court's review.

## II. RECOMMENDATION

Based on the foregoing, it is recommended that Capps's petition for writ of habeas corpus be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until March 24, 2010. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until March 24, 2010, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is

returned to the docket of the United States District Judge.

SIGNED March 3, 2010.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE